**James DONLEY, Plaintiff/Appellant,**

v.

**Lum PARKER, Defendant/Respondent.**

No. 60513.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 14, 1992.

Gordon W. Neilson, St. Louis, for plaintiff/appellant.

Pamela M. Triplett, St. Louis, for defendant/respondent.

GRIMM, Presiding Judge.

In a motion for summary judgment, defendant alleged he and plaintiff "entered into a binding agreement" that plaintiff would not prosecute plaintiff's claim for personal injuries. The trial court sustained the motion.

On appeal, plaintiff alleges "defendant failed to prove that there was any final permanent settlement of the case." We agree and therefore reverse and remand.

### I.

On September 28, 1986, automobiles driven by the parties collided. Each party allegedly sustained damages. Thereafter, plaintiff retained an attorney to represent him. In November, 1986, the attorney sent a lien letter to defendant, and a copy to defendant's insurance carrier.

Defendant's insurer responded by letter dated May 8, 1987. Insurer told the attorney that it had investigated the matter and concluded that plaintiff was at fault. Further, the letter stated defendant sustained substantial damages, which insurer paid under its uninsured motorists provisions because plaintiff was uninsured. As a result, insurer had a subrogation claim against plaintiff. The letter concluded by saying, "In an effort to equitably settle

this matter ... we will withhold our recovery attempts ... if the Bodily Injury liability claim is not pursued by [plaintiff]."

About four and one-half months later, the attorney responded. His letter said:

Our client has indicated to us that *he may be* willing to enter into an agreement that releases his claim against your insured if he can do so on a "break-even" basis. I *assume* ... he is willing to execute some form of a mutual release.

Since our office will not be earning any attorney's fee ..., we will look to you to prepare any such document. Naturally ... we will use our best efforts to see to it that such an agreement is executed to the satisfaction of both parties. (emphasis added).

Approximately a week later, insurer responded by letter:

We are in receipt of your letter ... advising us that your client *has agreed* to waive his claims in this as long as we do not pursue subrogation....

We wish to advise you that it will not be necessary for release forms to be signed as an acceptance of this agreement.... [W]e are herein agreeing that we will not pursue recovery of damages paid on this claim *as long as* your client does not pursue any claim....

Should there be any problem with the contents of this letter and acceptance of that agreement, please let our office know immediately in writing. Otherwise, we will assume that this mutual agreement is acceptable, and no further activity will occur on this case. (emphasis added).

There is no indication in the record that (1) either the attorney or plaintiff responded to this letter, or (2) any release was executed. The record next reflects a 1989 lien letter from plaintiff's present attorney. Plaintiff's petition and defendant's motion for summary judgment followed.

## II.

On appeal, plaintiff argues that summary judgment was improper because "defendant failed to prove there was any final permanent settlement of the case."

"A compromise settlement is a contract." *Randall v. Harmon,* 761 S.W.2d 278, 279 (Mo.App.S.D.1988). "The creation of a contract requires a definite offer and an unequivocal acceptance." *Around the World Importing, Inc. v. Mercantile Trust Co., N.A.,* 795 S.W.2d 85, 90 (Mo.App.E.D.1990). Neither of these necessary elements was present in this case.

The September, 1987 letter did not contain a definite offer. Rather, the letter is couched in conditional terms such as plaintiff *"has indicated ...* he *may be willing* to enter into an agreement." (emphasis added). Also, in the letter, plaintiff's attorney suggested insurer prepare some form of mutual release, and he would use his "best efforts to see to it" that the agreement was executed. No releases were ever signed or exchanged.

Further, insurer's October 1987 letter incorrectly reflects the September, 1987 letter. Insurer interpreted the letter to mean "that [plaintiff] has agreed to waive his claims ... as long as we do not pursue subrogation." However, at that point, there was no offer for insurer to accept.

Nor was there any legal significance to the last paragraph of insurer's letter: insurer informed plaintiff's attorney that unless it was notified otherwise, it "will assume that this mutual agreement is acceptable." There was no agreement, and plaintiff's silence could not operate as acceptance to create one. 17 C.J.S. Contracts § 41, p. 671 (1963).

Insurer's letter did nothing more than tell plaintiff's attorney that insurer would not sue so long as plaintiff refrained from bringing suit. Insurer's letter itself implied plaintiff had not yet waived his right to sue.

The trial court erred in granting defendant's motion for summary judgment. The judgment is reversed and remanded.

CRANDALL, J., and CHARLES B. BLACKMAR, Senior Judge, concur.